88 N.J. Super. 141 (1965)
211 A.2d 206
BARBARA A. IORIO, APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, AND NEW JERSEY BELL TELEPHONE COMPANY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1965.
Decided June 10, 1965.
*142 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Abraham Weiner, of the New York Bar, argued the cause for appellant (Mr. Robert Goodman, attorney).
Mr. Edward A. Kaplan argued the cause for Board of Review.
Mr. Bernard M. Hartnett, Jr. argued the cause for New Jersey Bell Telephone Company (Mr. Michael J. O'Neil, of counsel.)
The opinion of the court was delivered by GAULKIN, S.J.A.D.
This appeal presents the question whether a woman who quits her employment because of uncomplicated pregnancy is entitled to temporary disability benefits (hereafter T.D.), or to unemployment compensation (hereafter U.C.).
Mrs. Iorio (Iorio) quit her job on April 19, 1963. Her child was born five weeks later, on May 24. She returned to work in July. Her physician testified that although she was uncomfortable, she was not ill or disabled when she left and would have been able to do her work "until the day before delivery."
*143 The employer, New Jersey Bell Telephone Company (Bell), is self-insured, and provides T.D. for its employees under an approved "private plan." N.J.S.A. 43:21-32. Bell refused to pay her T.D. She appealed to the Private Plan Hearing Officer pursuant to N.J.S.A. 43:21-50. He held:
"In view of the testimony of the claimant and that of her treating physician, we are satisfied that the claimant did not become disabled due to complications of her pregnancy within two weeks following the termination of her employment, and she therefore is ineligible for benefits under the provisions of her employer's self-insured Private Plan. However, the claimant did give birth to a child on May 24, 1963, and was released by her physician as able to return to work on July 15, 1963. Any claim that the claimant may have for benefits must be considered under that section of the Unemployment Compensation Law dealing with disability during unemployment. As the Hearing Officer has no jurisdiction over the eligibility or ineligibility of claims for benefits under the Unemployment Compensation Law, he leaves the claimant to take such further action in the matter as she may deem necessary."
Iorio then prosecuted a claim for U.C., under N.J.S.A. 43.21-4. The Board of Review denied her U.C. It held that N.J.S.A. 43:21-4(c)(1) "clearly * * * establishes a conclusive presumption of disability beginning with the first day of the fourth week prior to the birth," and, since four weeks before birth was within two weeks of her quit, she was a "covered individual" under the Temporary Disability Benefits Act, and T.D. was payable to her under the employer's private plan (N.J.S.A. 43:21-27(b)), and she was not eligible for U.C., or for T.D. from the state fund. N.J.S.A. 43:21-4(f)(1)(G); 43:21-33, 34. Thus, as Iorio's brief says, "Two arms of the same administrative agency, the Division of Employment Security, rendered diametrically opposed interpretations of the relevant statutory provisions. These conflicting interpretations resulted in denial to plaintiff of any disability benefits whatsoever although it [was] recognized [by both] that she is entitled to statutory benefits."
However, before this court Bell does not limit its argument to the proposition that Iorio was not disabled within two *144 weeks of her quit. Rather, it argues that she is not entitled to any benefits whatever under the Temporary Disability Benefits Act because under that act "a claimant must establish * * * actual disability to perform the particular duties of his or her employment," for "the conclusive presumption of disability" contained in N.J.S.A. 43:21-4(c)(1) applies only to U.C. benefits.
The Board of Review and Iorio take the opposite view, contending that the Unemployment Compensation Act (R.S. 43:21-1 to 24.4) must be construed with the Temporary Disability Benefits Act (N.J.S.A. 43:21-25 to 56) as one organic whole, and so construed, the conclusive presumption of disability during the four weeks before and the four weeks after birth applies to every related provision of both acts even though it is spelled out only in N.J.S.A. 43:21-4(c)(1).
All parties concede that the statute is "bewildering" and a study of its provisions "unrewarding," as Justice Hall said in Butler v. Bakelite Co., 32 N.J. 154, 162 (1960). Bell argues for a literal and grammatical construction, which would limit the effect of the conclusive presumption of disability to U.C. On the other hand, the Board of Review and Iorio argue that the Legislature undoubtedly intended that the conclusive presumption was to apply to T.D. as well as to U.C., and the statute should be so construed.
The Board points out in its brief that:
"* * * under the construction placed by the Board of Review upon the 1961 amendments to the Unemployment Compensation Law and the Temporary Disability Benefits Law, the established practice of the Division has been, and is being followed, to hold the unemployed pregnant woman eligible for disability benefits for the four weeks immediately before the expected birth of child under subsection 4(f)(1) of the Unemployment Compensation Law where she is not a `covered individual,' or under the State plan where it is established that she is a `covered individual' under the Temporary Disability Benefits Law but not covered under a private plan, upon the mere production of a doctor's certificate fixing the date of the expected birth of her child without requiring proof of actual disability due to pregnancy. Any claim that may be made for unemployment benefits for this four-week period immediately before the expected birth of child is automatically denied.
*145 This established practice and interpretation of the 1961 amendments by the administrative agency charged with administration of the statute is entitled to great weight upon judicial review of the statute. * * *." (Emphasis ours)
In Van Kleek v. O'Hanlon, 21 N.J.L. 582, 591 (E. & A. 1845), the court said that "the supposed general intention of the legislature is to be considered in due subservience to the actual language used; and the language is not to be strained to support such supposed intention." However, as the court said in Leitner v. Citizens Casualty Co. of N.Y., 135 N.J.L. 608 (E. & A. 1947):
"A statute often speaks as plainly by inference, and by means of the purpose that underlies it, as in any other manner. A policy that is clearly implied is as effective as that which is expressed. Kobylarz v. Mercer, 130 N.J.L. 44, 52; Brandon v. Board of Com'rs of Town of Montclair, 124 N.J.L. 135; affirmed, 125 N.J.L. 367. When words are not explicit, the intention is to be collected from the context and the occasion and necessity of the law and from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and good discretion. The statute should have a rational construction consistent with its manifest purpose, and not one which will substantially defeat its object. * * *" (at pp. 611-612)
Therefore, it is necessary to trace the development of the Unemployment Compensation and Temporary Disability Benefits Acts, and especially of those sections with which we are here concerned.
We begin with the history of the statute set forth in Butler v. Bakelite Co., supra:
"* * * employee welfare legislation in New Jersey commenced with the workmen's compensation act providing benefits for work-connected disability regardless of fault. The next step was the unemployment compensation law (R.S. 43:21-1 et seq.), enacted to lighten the burden of economic insecurity on the worker due to involuntary unemployment caused without fault on his part. R.S. 43:21-2. A condition of eligibility for benefits is that the unemployed individual be able to and available for work * * *. N.J.S.A. 43:21-4(c). * * *.
From a social standpoint there remained gaps in the benefit scheme. There was no protection against wage loss resulting from disabling, involuntary, non-compensable accident or sickness suffered while in *146 employment or from loss of unemployment compensation benefits because of physical inability to work by reason of similar occurrence while out of work. The temporary disability benefits law was enacted in 1948 (L. 1948, c. 110; N.J.S.A. 43:21-25 et seq.) to cover the former situation and fill that gap (N.J.S.A. 43:21-26), either by means of a state-operated fund or a private plan set up and run by an employer in accordance with the statute. Janovsky v. American Motorists Insurance Co., 11 N.J. 1, 4 (1952); Potts v. Barrett Division, Allied Chemical & Dye Corporation, 48 N.J. Super. 554, 559 (App. Div. 1958); Bogda v. Chevrolet-Bloomfield Division, General Motors Corporation, 8 N.J. Super. 172 (App. Div. 1950). The same statute (L. 1948, c. 110, § 20) also filled the second gap by amending the benefit eligibility section of the unemployment compensation law. N.J.S.A. 43:21-4. Subsections (f) and (g) were added thereto, the former providing that where an unemployed individual suffered a non-compensable accident or sickness resulting in his total disability to perform any work for remuneration and would be entitled to unemployment compensation benefits except for his inability to work, he should nonetheless receive such benefits, paid, however, from the state fund created under the temporary disability benefits law (rather than from the unemployment compensation fund) and not charged to any employer in computing experience rate for unemployment compensation contributions. * * * [I]f there were no private plan involved, the only question would be out of which pocket the Division would pay him. However, subsection (g) (7) provides that no benefits shall be payable under (f) `for any period of disability commencing while such individual is a "covered individual" as defined in * * * the Temporary Disability Benefits Law.'
Having in mind the purpose and design of the latter law, * * * it seems clear on principle that the temporary disability statute * * * aims at the alleviation of economic insecurity during an interruption in one's employment and is not meant to reach the situation where one who is unemployed becomes disabled and unable to work. This is especially manifest when the contemporaneous enactment of subsection 4(f), exactly tailored to the factual setting, is noted. * * *" (32 N.J., at pp. 160-162; emphasis ours)
We have emphasized the last sentence to point up the fact, significant in the decision of the case at bar, that the Supreme Court construed the Unemployment Compensation and Temporary Disability Benefits Acts as mutually complementary and as illuminating each other.
When Butler was decided in 1960 the Unemployment Compensation Act provided (N.J.S.A. 43:21-4(g)(2)) that no U.C. benefits "shall be payable * * * for any period of disability due to pregnancy or resulting childbirth, miscarriage *147 or abortion * * *." The T.D. Act contained an identical exclusion (N.J.S.A. 43:21-39). Therefore, a woman who was forced to quit her job because of illness due to pregnancy was not eligible for U.C. or T.D. benefits. N.J. Bell Tel. Co. v. Bd. of Review, 78 N.J. Super. 144 (App. Div. 1963), affirmed o.b. 41 N.J. 64 (1963). If she quit her job because of pregnancy, though she was able to work, she was disqualified for U.C. benefits. Medwick v. Bd. of Review, 69 N.J. Super. 338 (App. Div. 1961). On the other hand, if she became unemployed through no fault of her own, but was able to work and available for work, she was entitled to U.C. even though no one would hire her because of her pregnancy. Myerson v. Board of Review, 43 N.J. Super. 196 (App. Div. 1957).
As was pointed out in Myerson, supra, and in 16 Rutgers L. Rev. 619 (1962), many states disqualified women from U.C. benefits for an arbitrary number of weeks before and after birth, even when they tendered themselves as able to work and available for work. In its 1958 Annual Report, at pp. 13-14, the Employment Security Council of the Division of Employment Security recommended that New Jersey adopt a pregnancy disqualification. It said:
"6. The law should include a pregnancy disqualification under which a woman would be presumed to be unavailable for work and therefore ineligible for benefits during the 8 weeks before expected confinement and the 4 weeks following childbirth.
During the period immediately preceding and following childbirth women normally are not available for regular work or are not usually employable if they lack employment. This fact has been recognized in 33 state laws which have special provisions for disqualification from benefits for unemployment due to pregnancy. Most of these states disqualify for a certain period before childbirth (4, 3, 2, or 1 1/2 months before or 13, 12, 10, 8, 6, or 4 weeks before) and for a certain period after childbirth (2 months, or 8, 6, 4, weeks). Other states provide disqualification for the duration of unemployment due to pregnancy, and half a dozen require a period of employment after pregnancy in order to qualify for benefits.
It seems evident that persons actually unavailable for their normal employment because of pregnancy are not unemployed within the concept of the statute and that compensation for their wage loss rightly *148 belongs under the Temporary Disability Benefits program and not under unemployment compensation. * * *."
This recommendation was repeated by the Council annually until L. 1961, c. 43, was passed. Bell says, correctly we think, that the Council made this recommendation because
"in the absence of such a provision, it was possible for a pregnant [unemployed] woman to receive unemployment benefits throughout a period when realistically she was not employable and, of course, in such event the benefits payable were chargeable to her base year employer (R.S. 43:21-7). The enactment of the amendment to Section 4(c) remedied this situation by foreclosing the payment of benefits from the unemployment compensation fund for the two four-week periods and by transferring the responsibility for any benefit payments provided during such periods to the 4(f) fund, which payments would not be chargeable to the employer's account. The insertion of this amendment * * * plainly evidences a legislative intent to bring New Jersey into line with a majority of the other states which provide specified periods of ineligibility for unemployment compensation benefits for varying periods before and/or after childbirth. * * *."
However, the recommendation of the Employment Security Council, "that compensation for their wage loss rightly belongs under the Temporary Disability Benefits program," was strenuously opposed by the Advisory Council on Disability Benefits, which said in its 1960 Annual Report, at page 6:
"Recommendation 4. Make no changes in the Law with respect to denying benefits for pregnancy and also disabilities arising from pregnancy. Pregnancy cannot be considered in the same light as a non-occupational illness or accident; it has always had a special connotation all its own.
It has been estimated that the claims load would increase approximately 35% by permitting the payment of benefits where pregnancy is involved. This would cost, under the present formula for calculating benefits, about $3,700,000 per year and upset radically the past relationship between benefits paid and contributions received."
The Advisory Council on Disability Benefits repeated its objections in its 1961 Annual Report, at page 9, saying flatly "Pregnancy should not be considered a non-occupational illness or accident compensable under the Temporary Disability Law."
*149 The Employment Security Council, appointed under N.J.S.A. 34:1A-16, the Advisory Council on Disability Benefits, appointed under N.J.S.A. 34:1A-18, and the Board of Review, N.J.S.A. 34:1A-19, are all agencies of the Division of Employment Security. Iorio's notice of appeal was addressed to the Board of Review. Therefore, Mr. Kaplan appeared nominally for the Board of Review and filed a brief on its behalf. However, we assume that the brief speaks for all branches of the Division.
On the other hand, it appears that representatives of labor argued that there should be no exclusion in either act as to pregnancy. They urged that the law should provide that if a woman was unable to work because of pregnancy she should receive T.D. benefits for as long as she was unable to work, and if she was able to work but unable to secure employment because of her pregnancy she should continue to be entitled to U.C. benefits without limit of time.
A number of bills were introduced in our Legislature to disqualify women from unemployment compensation for a fixed period before and after birth, but none provided for T.D. benefits for a corresponding period. Finally, L. 1961, c. 43, was adopted. As originally drawn it, too, did not provide for T.D. benefits during pregnancy. Apparently in an effort to allay the opposition to the bill, it was amended before final passage to provide for such benefits.
As finally passed, the bill made the following pertinent changes in the Unemployment Compensation and Temporary Disability Acts. The new provisions are emphasized.
N.J.S.A. 43:21-4 of the Unemployment Compensation Act was amended to read as follows:
"An unemployed individual shall be eligible to receive benefits with respect to any week only if it appears that:

* * * * * * * *
(c) He is able to work, is available for work, and has demonstrated that he is actively seeking work, except as hereinafter provided in this subsection or in subsection (f) of this section:
(1) No woman shall be deemed to be able or available for work during the 4 weeks immediately before the expected birth of her child or *150 the 4 weeks immediately following the birth of her child, in either of which cases the division may require the production of a doctor's certificate to establish such dates;

* * * * * * * *
(f) (1) He has suffered any accident or sickness not compensable under the Workmen's Compensation Law * * * and resulting in his total disability to perform any work for remuneration, and would be eligible to receive benefits under this chapter * * * except for his inability to work * * *; provided, however, that no benefits shall be payable under this subsection to any individual:

* * * * * * * *
(B) for any period of disability due to pregnancy or resulting childbirth, miscarriage, or abortion, except for disability existing during the 4 weeks immediately before the expected birth of child, and the 4 weeks following the termination of the pregnancy;

* * * * * * * *
(G) for any period of disability commencing while such individual is a `covered individual' as defined in subsection 3(b) of the Temporary Disability Benefits Law (chapter 110, P.L. 1948).
(2) Benefit payments under this subsection shall be charged to and paid from the State Disability Benefits Fund established by the Temporary Disability Benefits Law, and shall not be charged to any employer account in computing any employer's experience rate for contributions payable under this chapter.

* * * * * * * *."
N.J.S.A. 43:21-5 of the Unemployment Compensation Act was amended to read as follows:
"An individual shall be disqualified for benefits:
(a) For the week in which he has left work voluntarily without good cause attributable to such work, and for each week thereafter until he has earned in employment (which may be with an employing unit having in employment 1 or more individuals) at least 4 times his weekly benefit rate, as determined in each case; provided, however, that no disqualification shall be applicable to a woman who left or was separated from her work solely by reason of her pregnancy."
N.J.S.A. 43:21-29 of the Temporary Disability Act was amended to read:
"Disability shall be compensable subject to the limitations of this act [43:21-25 to 43:21-56], where a covered individual suffers any accident or sickness not arising out of and in the course of his employment or if so arising not compensable under the workmen's compensation law * * *, and resulting in his total inability to perform the *151 duties of his employment. For the purposes of this act, pregnancy may be deemed to be a sickness during the 4 weeks immediately preceding the expected birth of child and the 4 weeks immediately following the termination of the pregnancy."
The definition of "Period of Disability" contained in N.J.S.A. 43:21-27 of the Temporary Disability Benefits Act was not changed. It was:
"(g) `Period of disability' * * * shall mean the entire period of time, during which he is continuously and totally unable to perform the duties of his employment, * * *."
N.J.S.A. 43:21-39 of the Temporary Disability Benefits Act was amended to read as follows:
"Notwithstanding any other provision of this act, no benefits shall be payable under the State plan to any person:

* * * * * * * *
(c) for any period of disability due to pregnancy or resulting child-birth, miscarriage, or abortion, except for disability existing during the 4 weeks immediately before the expected birth of child, and the 4 weeks following the termination of the pregnancy;

* * * * * * * *."
The position of the employer is that, read literally,
"There is not a single phrase in the Temporary Disability Benefits Law to suggest that something less than proof of actual disability is acceptable in order to establish eligibility to benefits. * * * The mere use of the permissive `may' [in N.J.S.A. 43:21-29] rather than the mandatory `shall' wholly negates any such intention. * * * [T]he 1961 Amendment did not change this explicit requirement that a compensable disability must result in `total inability to perform the duties of * * * employment'."
The position of the Board of Review and Iorio is simply this: The Legislature did not intend, by L. 1961, c. 43, to lessen the benefits for pregnant women, especially those who found it necessary to seek employment in spite of their pregnancy. Before the adoption of that statute, a pregnant worker, unemployed through no fault of her own, who was willing to *152 work until her confinement, was entitled to collect U.C., even though realistically no one would hire her and even though she was too large and uncomfortable to do a day's work efficiently. The 1961 amendment took away that right for the period of four weeks before and four weeks after birth. The construction urged by Bell would leave such a worker without any benefits, U.C. or T.D., during that period.
We find ourselves unable to believe that that was the intention of the Legislature. On the contrary, we think the Legislature intended to substitute, for those eight weeks of U.C. disqualification, benefits for an equal period under the Temporary Disability Benefits Act. If it were necessary to prove actual disability to obtain T.D. benefits, as Bell claims, the women who sought work in spite of pregnancy, presumably because they needed the income most, would be disqualified. The alternative chosen by the Legislature was to provide that all pregnant workers were to receive T.D. benefits for the eight-week period whether or not they were in fact disabled. The Legislature apparently deemed it desirable, as a matter of public policy, that a pregnant woman should have leisure to take care of herself and her child for the eight-week period.
We agree that, although sections 43:21-1 to 43:21-24.4 of Title 43 are called the Unemployment Compensation Act and 43:21-25 to 43:21-56 are called the Temporary Disability Benefits Act, they must be read and construed together. We hold that, so construed, the statute means that a pregnant woman is entitled to temporary disability benefits for the period of four weeks before birth and four weeks after birth without proof of actual disability, and the fact that she quits because of her pregnancy does not disqualify her or disentitle her to benefits. We conclude, furthermore, that the period of disability conclusively begins 28 days before birth. Since that date was within two weeks of Iorio's quitting her employment, Bell's private plan must pay her the disability benefits.
The employer argues that the appeal from the decision of the Private Plan Hearing Officer must be considered separate and apart from the appeal from the decision of the Board *153 of Review, and so considered, the appeal from the former decision is out of time. We disagree. We consider the Private Plan Hearing Officer and the Board of Review as arms of the same administrative agency  the Division of Employment Security  and an appeal after exhausting all possible remedies in that Division is timely. Even if we were wrong in this analysis, we would hold that this situation, in which different organs of the same Division come to contrary results, demands a relaxing of the rules. Cf. Hodes v. Oak Flooring Co., 43 N.J. 359 (1964).
The judgment of the Board of Review is affirmed. The judgment of the Private Plan Hearing Officer is reversed and the case is remanded to him for the allowance of benefits in accordance with this opinion.