142 N.J. Super. 162 (1976)
361 A.2d 44
CONTINENTAL CASUALTY COMPANY, APPELLANT,
v.
SAMUEL KNUCKLES, CLAIMANT-RESPONDENT, DEPARTMENT OF LABOR AND INDUSTRY, DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE, RESPONDENT. CONTINENTAL ASSURANCE COMPANY, APPELLANT,
v.
JUDITH ANN FREER, CLAIMANT-RESPONDENT; DEPARTMENT OF LABOR AND INDUSTRY, DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1976.
Decided May 21, 1976.
*163 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Paul J. Hirsh argued the cause for appellants (Messrs. Friedman & D'Alessandro, attorneys; Mr. Michael F. Lombardi on the brief).
Mr. Jeffrey P. Blumstein, Deputy Attorney General, argued the cause for respondent Board of Review (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Michael S. Bokar, Deputy Attorney General, of counsel).
The opinion of the court was delivered by FRITZ, P.J.A.D.
The appeals in these consolidated temporary disability cases involve no disputed questions of fact. The legal conundrum presented is simple to state: does N.J.S.A. 43:21-39, in its provision for withheld first "waiting week" benefits until "benefits shall be payable for 3 consecutive weeks," require first-week payment if the disability extends into any day or days of the third consecutive week thereafter? The Board of Review, Division of Employment Security (whose function in these matters we *164 are told is now in the Division of Unemployment and Temporary Disability Insurance) answered the question in the affirmative. The insurance companies appeal, asserting that the waiting week benefits are not payable until three full consecutive weeks of disability thereafter have come and gone.
While the argument of appellants, premised substantially upon the contention that the words of the statute make the legislative intent apparent, is not without some persuasiveness, we are satisfied that the determinations should be affirmed for reasons which follow.
The statute in question, a section of the Temporary Disability Benefits Law (N.J.S.A. 43:21-25 et seq.), reads in pertinent part as follows:
Notwithstanding any other provision of the Temporary Disability Benefits Law, no benefits shall be payable under the State Plan to any person:
(a) for the first 7 consecutive days of each period of disability, except that if benefits shall be payable for 3 consecutive weeks with respect to any period of disability commencing on or after January 1, 1968, then benefits shall also be payable with respect to the first 7 days thereof;

* * * * * * * *
Uncontroverted testimony in the Knuckles hearing demonstrated that the "practice of the disability insurance service of the State of New Jersey" has been for "the State plan [to] pay the waiting period, if otherwise payable, if the period of disability extends for 22 or more days." In other words, the word "week" in the statute is construed by the administrative agency responsible to mean "any portion of a week." Additionally, "[a]ll private plans, both insured and self-insured, union funds and self-administered have been directed to do likewise," athough "[s]ome have done so and some have refused." This administrative position has prevailed apparently since the effective date of the amendment providing for the waiting period, January 1, 1968.
*165 It cannot be said that appellants' argument rationalizing the case for reversal from the meaning of the words used in the statute and the distinction between those words and language employed in N.J.S.A. 43:21-4(d), a section of the Unemployment Compensation Law, is frivolous. Justice Hall long ago referred to the "somewhat bewildering and unrewarding provisions" of the Temporary Disability Benefits Law. Butler v. Bakelite Co., 32 N.J. 154, 162 (1960). But we are impelled to a contrary conclusion by other considerations.
In the first place, we are confident that the Legislature is well aware of the long-standing administrative interpretation accorded the statute: it was expressly advised of this in public legislative hearings on the unemployment compensation laws in February 1968, not two months after the enactment of the amendment in question. At that time counsel for the Health Insurance Association of America appeared and reported:
The division of Employment Security has interpreted these sections to require that the retroactive benefits covering the first week of disability must be paid if the claimant is eligible for benefits for at least one day in each of three consecutive weeks. We do not believe that this interpretation represents the intent of the legislature. To clarify this, we think that the law could be amended to state specifically that the retroactive benefit covering the first week of disability is payable after the disabled employee has completed four consecutive weeks of disability; that is, after three full weeks of benefits are payable. [Public Hearing Before Senate and Assembly Labor Relations Committees on State Unemployment Compensation Laws, at 74A-75A (Feb. 19, 1968)]
The complaints persisted. In December 1970 the Secretary of the New Jersey State Chamber of Commerce insisted:
And we think too it is about time the Legislature corrected a major goof that was made in Senate 400 in 1967 when a misinterpretation of the retroactive features of the Temporary Disability Benefits Law was made. It was clearly the intention  and the public hearing will show it  that the idea was to pay retroactive *166 payment of the waiting week and temporary disability after the individual had been disabled for a full four weeks. But by interpretation, not yet determined by the court, it is now three weeks and one day. We think certainly those two items ought to be considered simultaneously with any passage of legislation financing the Temporary Disability Benefits Program and providing for extended benefits. * * * [Public Hearing Before Assembly Committee on Labor Relations on Assembly Bills Nos. 1288, 1315, and Assembly Committee Substitute for Assembly Bill 1047, at 30 (Dec. 8, 1970)]
The therein proposed amendatory legislation was not adopted, despite the fact that the Temporary Disability Benefits Law has since been amended several times. See, e.g., L. 1974, c. 86; L. 1971, c. 346. This inaction in the face of express discontent, in the light of knowledge of the administrative construction of the statute helps serve to convince us that that construction was consistent with the legislative intent.
Further, no other interpretation would serve to harmonize the Temporary Disability Benefits Law, compensating employed (or recently employed) persons for disabilities not related to their employment, with the Unemployment Compensation Law, compensating for disabilities occurring while the injured is unemployed. See N.J.S.A. 43:21-4(f). These laws, dealing with the same matter or subject, are in pari materia, Mimkon v. Ford, 66 N.J. 426, 433 (1975), and are "mutually complementary and * * * illuminat[e] each other." Iorio v. Bd. of Review, 88 N.J. Super. 141, 146 (App. Div. 1965). As such, a legislative intent should be derived which serves the common purpose. Cf. N.J.S.A. 43:21-40. A relevant observation, delivered in a somewhat different context, appears in State v. Federanko, 26 N.J. 119 (1958):
* * * The Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose. * * * [at 129]
Nor are we dissuaded from this view by the difference in language between the two statutes, emphasized by appellants, *167 although as we said above, we recognize that the argument thus made is not a frivolous one. However,
* * * [W]ords alone do not control; rather it is the internal sense of the law which controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms. Palkoski v. Garcia, 19 N.J. 175, 181 (1955). The nature of the subject matter, the contextual setting, and statutes in pari materia must all be viewed together in seeking the legislative intent. The import of a particular word or phrase is controlled accordingly. * * * [Loboda v. Clark Tp., 40 N.J. 424, 435 (1963)]
First attention should go to the purpose of the legislation. "Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter." N.J. Builders, etc., Ass'n v. Blair, 60 N.J. 330, 338 (1972). It cannot be better put than as by Justice Heher in San-Lan Builders, Inc. v. Baxendale, 28 N.J. 148, 155 (1958), "Reason is the soul of law."
Finally, we are reassured in our conclusion here by remembering that this is remedial legislation, N.J.S.A. 43:21-26, and we are commended to a construction which will best serve broadly the beneficent purposes of the statute. Campbell Soup Co. v. Div. of Employment Security, 13 N.J. 431 (1953).
Affirmed. No costs.