BLOOMINGDALE INDUSTRIAL PARK, PLAINTIFF, v. BOROUGH OF BLOOMINGDALE, DEFENDANT.

Tax Court of New Jersey

June 25, 1980.

*Wolf, Baumann & Burstein,* for plaintiff (*Albert Burstein,* appearing).

*D'Angelo & Clemack,* for defendant (*John G. D'Angelo,* appearing).

HOPKINS, J. T. C.

This is an appeal from the judgment of the Passaic County Board of Taxation affirming the disallowance by defendant's assessor of an application to have plaintiff's property assessed, for the tax year 1974, pursuant to the Farmland Assessment Act of 1964, *L.* 1964, *c.* 48.

The property involved is Block 49, Lot 111 located in the taxing district of Bloomingdale. It consists of approximately 81.2 acres, of which 36 acres is woodland and 45.2 acres is open area pasture.

The issues to be decided are (1) whether the owner, as distinguished from a tenant, must realize gross sales as prescribed by *N.J.S.A.* 54:4–23.5 as amended by *L.* 1973, *c.* 99, § 1, eff. May 2, 1973; (2) whether subject property qualifies for farmland assessment by virtue of its use in the boarding, breeding, raising and training of horses as well as its use in training riders of such horses; and (3) assuming the property qualifies for taxation under the Farmland Assessment Act, does the Freeze Act, as provided by *N.J.S.A.* 54:2–43, apply for the tax years 1975 and 1976.

The subject property, as of the tax year 1971, had been owned by one Donald Tintle. Tintle sold the property in that year to plaintiff but continued to lease the property and use it as hereinafter detailed. Tintle testified that he believed that he

stopped using the property in 1974. However, bills issued by and checks payable to him showed that he was using the property at least until sometime in 1975.

Tintle, trading as Spring Brook Acres, also owned property designated as Lot 112, which was adjacent to the subject property. Both properties were used by Tintle in what he admitted was essentially the operation of a livery stable. A barn containing horse stalls was located on Lot 112. Tintle's operation included boarding, pasturing, grooming, shoeing and providing for medical treatment of horses; training both race and show horses for private individuals; giving riding lessons to children; breeding horses for himself as well as others; and buying and selling horses. During the average year he would have from 25 to 35 horses on the properties, of which 5 to 10 were owned by him. Tintle testified that the woodland portion was used to train and strengthen horses owned by other individuals or ones that he planned to sell. While Lot 112 was the focal point of the operation, with more than 50% of his billings for services performed there, the subject property was necessary for pasturing the horses as well as training and conditioning them.

Tintle testified that he sold 4 or 5 horses every year at an average price of $800 to $1,000. Statements and checks in evidence show that he realized substantially more from the operation of his livery and training activities than from the sale of horses.

Tintle admitted that while he was obligated to pay either $500 or $1,000 a year rent plus, and of this he was uncertain, the local property taxes, he never did pay any rent. Instead, as the new owner was delinquent in mortgage payments, he merely offset his rents against those overdue payments.

■ Defendant contends that, as the owner of the subject property did not actually receive any rents, the property cannot qualify for farmland assessment. In this respect, *N.J.S.A.* 54:4–23.5 requires that in order for land to be deemed devoted to agricultural use, gross sales must be at least $500 per year plus $5.00 for each acre in excess of the first 5 acres or, in the case of woodland or wetland, $.50 for each additional acre.

Defendant's position with respect to the owner being required to show such gross sales is in error. The criteria is not whether the owner of the land had gross sales but, rather, whether agricultural or horticultural products produced thereon have gross sales in excess of the designated amounts. This is clear from a reading of *N.J.S.A.* 54:4–23.1 through 23.7, wherein the criteria is all directed to land use and gross sales from such use rather than gross sales by the owner.

This aspect was approved, without discussion, in *Tp. of Andover v. Kymer*, 140 *N.J.Super.* 399, 356 *A.*2d 418, (App.Div.1976), wherein the owner permitted the former owner to occupy and farm the property rent free. Accordingly, assuming that all of the subject property was devoted to the production and sale of horses, the gross sales, which approximated $3,600 to $5,000 a year would exceed the required amount.

■ The more basic question, however, is whether the subject property was "actively devoted to agricultural use."

*N.J.S.A.* 54:4–23.3 provides as follows:

"Land shall be deemed to be in agricultural use *when devoted* to the production for sale of . . . animals useful to man, including but not limited to: . . . livestock including . . . horses, ponies, . . . including the breeding and grazing of any or all such animals; . . ." [emphasis supplied]

Art. VIII, § I, par. 1(b) of the New Jersey Constitution, which provides for the favorable farmland assessment, specifically restricts the permitted assessment to land "actively devoted to agricultural or horticultural use."

There is no doubt that the subject property was used during the tax year involved, and in the prior two years, for the production for sale of horses. However, it was also used in the boarding of horses owned by other individuals, the training of horses owned by other individuals, and the training of young horse riders.

In *East Orange v. Tp. of Livingston*, 102 *N.J.Super.* 512, 246 *A.*2d 178 (Law Div.1968) aff'd 54 *N.J.* 96, 253 *A.*2d 546 (1969), the court had occasion to consider the issue of whether the farmland assessment can be applied to land having a multiple

use. In that case, the land was used both as a watershed and to produce hay and wood for commercial sale. The court found that the primary purpose for which the land was used was that of a watershed. Under those circumstances, the land could not have been deemed "devoted" to agricultural use. See, also, *Urban Farms, Inc. v. Tp. of Wayne*, 159 *N.J.Super.* 61, 386 *A.2d* 1357 (App.Div.1978).

The subject property was an integral part of a livery stable and horse training operation. Of the horses using the land, approximately 75 percent belonged to other individuals for whom the tenant was performing services in addition to boarding the horses. The operation was essentially a service operation for other individuals rather than a production operation for sale of horses.

Accordingly, the subject property was not devoted to an agricultural purpose, within the provisions of *N.J.S.A.* 54:4–23.3, as to the tax years 1972, 1973 and 1974.

In view of the above, the issue as to the application of the Freeze Act is moot.

Judgment will be issued affirming the action of the Passaic County Board of Taxation.