204 N.J. Super. 185 (1985)
497 A.2d 1287
ALLING STREET URBAN RENEWAL COMPANY, PLAINTIFF-APPELLANT,
v.
CITY OF NEWARK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 5, 1985.
Decided September 11, 1985.
*187 Before Judges FRITZ, GAULKIN and LONG.
Morris M. Schnitzer argued the cause for appellant.
Kathleen C. Goger, Assistant Corporation Counsel, argued the cause for respondent (John C. Pidgeon, Acting Corporation Counsel, attorney).
Roger M. Nelson, General Attorney, argued the cause for amicus curiae Public Service Electric and Gas Company (Frank A. Sickinger, Assistant General Attorney, attorney).
Irwin I. Kimmelman, Attorney General of New Jersey, filed a letter brief amicus curiae on behalf of the State of New Jersey (Susan N. Ferschmann, Deputy Attorney General, on the letter brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
*188 This appeal centers about a dispute between an urban renewal contractor, plaintiff Alling Street Urban Renewal Company (Alling), and the City of Newark and requires our interpretation of the credit provision of N.J.S.A. 40:55C-65. The trial judge found "no great difficulty" with the construction of the statute urged by Newark and entered judgment accordingly. While we think the matter is not without some difficulty, we reach a different conclusion from that of the trial judge and so reverse.
Plaintiff is a limited partnership qualified to do business under the Urban Renewal Corporation and Association Law of 1961, N.J.S.A. 40:55C-40 et seq. (the Act). As such it entered into an agreement, to be "governed by the provisions of [the Act]," with the City of Newark, approving an urban renewal project in Newark and committing the city to an exemption from taxation of the improvements "in accordance with the provisions of [the Act]." For this Alling was obligated for payment of "an Annual Service Charge for municipal service supplied to said project of a sum equal to 2% of the total project cost." Acknowledging the application of N.J.S.A. 40:55C-65, the agreement provided for installment payments. The contract did not provide for any credit, but clearly the agreement was entered into in conformity with the statute. The question here is not the fact of the entitlement of plaintiff to credit, but rather the meaning of the credit provision in the statute.
The "Annual Service Charge" provided for in the agreement conforms to the statutory scheme. In the statute a credit clause follows the extensive and complicated formulation of the annual service charge:
Against such annual charge the corporation or association ... shall be entitled to credit for the amount, without interest, of the real estate taxes on land paid by it in the last four preceding quarterly installments.
The issue is simple to state: Alling equates "such annual charge" in the above phrase with the annual service charge to which reference is made in the several preceding paragraphs of *189 this section. It insists that the land taxes paid should be credited against that charge, subject only to the provision, also appearing in the section, that "in no event shall such [annual service charge] payment together with the taxes on the land, in any year after first occupancy of the project be less than the total taxes assessed on all real property in the area covered by the project in the calendar year immediately preceding the acquisition of the said area by the municipality or its agency, or by the private or public owner from whom the urban renewal corporation acquired the land." See N.J.S.A. 40:55C-65. Newark, on the other hand, argues that had the Legislature meant "annual service charge" in the credit provision, it would have said that rather than "annual charge," the phrase thus demonstrating that the credit was to be applied against all annual charges including the land taxes.
The trial judge was persuaded by the difference in language, as urged by Newark, holding that "[t]he annual service charge is one thing and the annual charge is the land taxes plus the annual service charge." It is in this that our judgment differs from his.
Hornbook law and consistent authority require that in the search for legislative intent, which is our single purpose, Clifton v. Zweir, 36 N.J. 309, 322 (1962), if the words used have a plain meaning, construction is not only unnecessary but improper. Duke Power Co. v. Patten, 20 N.J. 42, 49 (1955). Such an effort "in a case where not required is to do violence to the doctrine of the separation of powers." Watt v. Mayor and Council of Borough of Franklin, 21 N.J. 274, 277 (1956). Although our reaction to the words is different from that of the trial judge (which would seem to contraindicate a plain meaning to the words), we remain persuaded that reference to "such" annual charge, in a section which refers collaterally to real estate taxes but is forcefully and directly concerned with the annual service charge, can mean only that charge, i.e., the annual service charge. Reinforcement for this view is found in *190 the fact that the paragraph immediately preceding that in which "such annual charge" appears speaks in its only sentence of the "aforesaid payment," a clear, indisputable reference to the annual service charge. We believe that the distinction between "annual service charge" and "annual charge" considered in the context of the whole body of law and the juxtaposition of these phrases with the others in this one section of the statute is too thin a reed to thwart the obvious public purpose inherent in this section of the statute. As is said in Loboda v. Clark Tp., 40 N.J. 424 (1963):
[W]ords alone do not control; rather it is the internal sense of the law which controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms. Palkoski v. Garcia, 19 N.J. 175, 181 (1955). The nature of the subject matter, the contextual setting, and statutes in pari materia must all be viewed together in seeking the legislative intent. The import of a particular word or phrase is controlled accordingly. Isolated expressions cannot be invoked to defeat a reasonable construction. Giles v. Gassert, 23 N.J. 22, 33-34 (1956). [At 435.]
Apart from this, were the statute to carry the interpretation for which Newark argues, the credit section would be superfluous. As Alling emphasizes in its brief, to subtract the land taxes assessed from a sum of which one of the components is the land taxes leaves the gross annual service charge intact, "the very result which the tax exemption section would have produced if the credit formula of N.J.S. 40:55C-65, 97 were simply blanked out of the Acts." It is also fundamental in statutory construction not only that all parts of the same statute shall be read in pari materia, Brewer v. Porch, 53 N.J. 167, 174 (1969), but also that the Legislature is presumed not to have included useless language. Collected in Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 521 (1984) are the leading cases standing for the proposition that construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided.
Assaying the purpose of a statute is almost preemptive in ascertaining the intent of the lawmakers. Continental Cas. Co. v. Knuckles, 142 N.J. Super. 162, 167 (App.Div. 1976). Here *191 the purpose of the Act, clear by implication in any event, is expressed precisely in the declaration of policy found in N.J.S.A. 40:55C-41 where it is said:
[I]t is further declared that in the interest of the health, safety and welfare of the public, and the economic and social progress of the municipality, land should be restored to a use resulting in the elimination of the blighted condition; that in order to accomplish this purpose investment of private capital and participation by private enterprise should be encouraged; that the clearance, replanning, development and redevelopment of such blighted areas are public purposes and public uses for which public money may be expended ... and that the successful clearance, replanning, development and redevelopment of blighted areas necessitates the use of special financial arrangements to secure adequate private investment and participation by private enterprise. .. .
Unquestionably exemption from taxation is a particularly attractive "special financial arrangement" likely to encourage the infusion of private capital. Such exemption cannot be constitutionally applied to real estate taxes since we are enjoined to assessment of property for tax purposes "under general laws and by uniform rules." N.J. Const. (1947), Art. VIII, § I, par. 1(a). Arguably a credit applied to a sum including a real property tax component might be considered a reduction in taxes, in part at least, and therefore an unconstitutional failure of the uniformity mandate. In statutory construction, a determination reflecting intent on the part of the Legislature to act in harmony with the Constitution will always be preferred. State v. Profaci, 56 N.J. 346, 349 (1970). It is to be observed that the constitutionality of exemption from taxation of improvements to real property in the redevelopment situation is preserved by N.J. Const. (1947). Art. VIII, § III, par. 1.
In this same vein, we have no doubt that it was the intent of the Legislature additionally to further the purposes quoted above by this credit provision. To woo private capital with the same breath that blows away the inducement  the effect of the interpretation sought by Newark and offered by the trial judge  is clearly counterproductive and would hardly serve either the particular or the general purpose of the legislation.
*192 We reverse and remand for the entry of judgment in favor of plaintiff.