HAMILL, J.T.C.
In this local property tax matter plaintiff, Daniel Dowd, challenges a denial of farmland assessment for the 1993 tax year. Farmland assessment was denied on the ground that the principal activity conducted on the property is the grazing of horses. According to the township, grazing horses, like boarding horses, is not a qualifying agricultural use. Plaintiff maintains that grazing horses, as opposed to boarding them, qualifies for farmland assessment. The Monmouth County Board of Taxation affirmed the denial of farmland assessment.
The property at issue is Block 50, Lot 59Q in Howell Township. (The designation “Q” means that the lot qualified for farmland assessment. As a result of the denial of farmland assessment, there is presently only a Lot 59 and no Lot 59Q.) For the period at issue the property consisted of Lot 59Q containing between eleven and twelve acres and Lot 59 (presumably the homesite) consisting of .47 acres. When farmland assessment was denied, the entire property, including improvements, was assessed at $237,600. Plaintiff has not challenged the value of the property if farmland assessment is denied.
Plaintiff described the agricultural use of the property as follows. Approximately ten acres of the property are divided into three horse pastures — one containing approximately five acres, another three acres, and another two plus acres. Somewhat less than an additional one acre is planted in evergreen seedlings. The three pastures are fenced and contain run-in sheds for horses. There are two barns on the property, but they are not used to board horses.
The grazing operation includes three to four horses on average. The horses belong to individuals who pay plaintiff $75 per horse per month for pasturing. The horses are “turned out” in the pastures, meaning, according to Mr. Dowd, that they are not being trained but are more or less in retirement. Plaintiff testified that he was careful to offer his pastureland only to individuals who did not intend to ride their horses on his property. There are no rider or horse training facilities on the property, e.g., no track or *84 riding ring, and plaintiff has no responsibility for exercising the horses. Some of the horses may be brood mares, but they are not owned by plaintiff, and plaintiff does not sell horses or foals.
Under the terms of the agreement entered into between plaintiff and a horse owner, Mr. Dowd provides no services to the owner other then making available his pastures and run-in sheds. In particular, unless the owner pays an additional amount, plaintiff does not feed or water a horse, call or assist a veterinarian or blacksmith, or provide a stall or transportation to and from the Dowds’ property. The horse owners are completely responsible for the well-being of their horses. This involves checking on a horse once or twice a day; plaintiff has no responsibility for doing this. The owners provide their own feed tubs and grain and see that their horses are both fed and watered. If an owner wishes Mr. Dowd to provide additional services, the agreement specifies an additional fee. Plaintiff testified that he has never been asked to provide such additional services since he began leasing his pastures.
The agreement further specifies that Mr. Dowd’s farm is not responsible for accidents to or sickness or death of a horse and is not liable for damage to property or injury to individuals caused by a horse.
For the 1991 calendar year plaintiff received gross income in the amount of $2,725 from horse- grazing. In 1992 he received $2,290 from grazing and an additional $650 from the sale of evergreen seedlings. During 1993 Mr. Dowd received $1,115 from horse grazing and $820 from the sale of evergreens.[1]
On his application for farmland assessment for the 1993 tax year, plaintiff indicated that he had .6 acres of cropland harvested (presumably the evergreens), nine acres of permanent pasture, ie., the grazing operation, and 2.21 acres of appurtenant wood *85 land. He further indicated under “livestock” that he had four horses on the property.
The only dispute in this matter is whether land used for grazing horses qualifies for farmland assessment.
N.J.S.A 54:4-23.3 provides in pertinent part:
Land shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including but not limited to: forages and sod crops; grains and feed crops; dairy animals and dairy products; poultry and poultry products; livestock, including beef cattle, sheep, swine, horses, ponies, mules or goats, including the breeding and grazing of any or all of such animals.
[emphasis added].
N.J.S.A 54:4-23.5 provides in pertinent part:
Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the gross sales of agricultural or horticultural products produced thereon ... have averaged at least $500.00 per year during the 2-year period immediately preceding the tax year in issue.
[emphasis added].
Grazing horses for a monthly fee per horse does not involve the sale of a plant or an animal useful to man within the meaning of N.J.S.A 54:4-23.3. Nor does grazing horses for a fee involve the sale of an agricultural or horticultural product within the meaning of N.J.S.A 54:4-23.5. Mr. Dowd is offering his pastureland to horse owners for a monthly fee per horse; he is not selling grass or hay as such, nor is he selling horses.
It may be possible to distinguish plaintiffs grazing operation from a more typical horse boarding operation involving additional services such as the provision of stalls, feeding and watering horses, and veterinary and farrier services. The fact remains, however, that plaintiffs activity no more involves the sale of agricultural or horticultural products than does the boarding of horses. The service provided may be minimal, but no sale of a product is involved.
Plaintiff would have the phrase in N.J.S.A 54:4-23.3 “including the ... grazing of any or all of such animals” separated from its context and denominated a separate qualifying category of agricultural use. The statute, however, must be read as a whole. Denbo v. Moorestown Tp., 23 N.J. 476, 481, 129 A.2d 710 *86 (1957) (“The true meaning and intention of legislation must be derived from the whole and not from any single component part, or else distortion is sure to result.”). “Every word, sentence and clause shall, if possible, be given full force and effect.” Cobb v. Waddington, 154 N.J.Super. 11,17, 380 A.2d 1145 (App.Div.1977), certif. denied, 76 N.J. 235, 386 A.2d 859 (1978). The preliminary phrase in N.J.S.A. 54:4-23.3 makes clear that all of the illustrative agricultural activities must involve the “sale of plants and animals useful to man____” To construe N.J.S.A 54:4-23.3 as Mr. Dowd would have it would make the section conflict with N.J.S.A. 54:4-23.5, which limits qualifying farm income to income from the “gross sales of agricultural or horticultural products.” Moreover, N.J.A.C. 18:15-6.2(a)4, defining the statutory phrase “devoted to agricultural or horticultural use,” makes clear that pastureland qualifies on the basis that it is used to pasture animals which are produced for market or to pasture animals whose products are produced for market. Under the regulation, grazing animals for a fee is not the devotion of land to an agricultural use because no product for market is being produced.
Although involving a more typical horse boarding operation, the analysis in Bloomingdale Indus. Park v. Bloomingdale Bor., 1 N.J.Tax 145 (Tax 1980), provides guidance. Judge Hopkins there stated:
Of the horses using the land, approximately 75% belonged to other individuals for whom the tenant was performing services in addition to boarding the horses. The operation was essentially a service operation for other individuals rather than a production operation for sale of horses.
[Bloomingdale Indus. Park, supra, 1 N.J.Tax at 149.]
See also Miele v. Jackson Tp., 11 N.J.Tax 97, 99 (App.Div.1989), (confirming that “bringing race horses onto [a] farm for the purpose of resting them or rehabilitating them between races or caring for them if they are injured, is not an agricultural use for which farmland assessment can be granted.”)
Plaintiff maintains that a pending bill to amend the Farmland Assessment Act establishes that grazing is currently a qualifying agricultural use and that grazing and boarding horses differ.
*87 Assembly Bill 2520 (1995) and its companion, Senate Bill 1746 (1995), would expand the definition of qualifying agricultural activities in N.J.S.A. 54:4-23.3 to include the boarding, raising, rehabilitating, and training of livestock, e.g., horses, and would amend N.J.S.A, 54:4-23.5 to include in qualifying income “fees received for breeding, boarding, raising, rehabilitating, training or grazing any livestock____” Far from indicating that grazing, without more, is currently a qualifying activity, the legislative history of A. 2520 and S. 1746 makes clear that grazing animals for a fee is not a qualifying agricultural use. The statement of the Assembly Economic Development, Agriculture, and Military and Veterans’ Affairs Committee, which considered and amended A. 2520, indicates that, under current law, in order to be considered actively devoted to agricultural or horticultural use, the land must be at least five acres in size and “the gross sales of products produced thereon together with any payments received under a soil conservation program must have averaged at least $500 per year during the two-year period immediately preceding the tax year in issue.” (emphasis added.) The statement continues:
This bill would allow the fees received for breeding, boarding, raising, rehabilitating, training or grazing any livestock to be considered in meeting the $500 eligibility requirement.
[emphasis added].
Quite clearly, the Legislature has recognized that fees for breeding, boarding, and grazing horses cannot, under current law, be considered in determining the $500 minimum income requirement. In addition, the inference to be drawn from the committee statement is that under current law there is no difference between grazing livestock for a fee and boarding livestock for a fee. Under current law, fee income simply does not count toward the $500 minimum income requirement.
In sum, it is clear that grazing horses for a fee, with no sales of horses or feed crops involved, does not qualify as an agricultural use for purposes of farmland assessment. Accordingly, the denial of farmland assessment in this case is affirmed. The court will enter a judgment accordingly.

 Plaintiff did not argue that the property qualified for farmland assessment based exclusively on the cultivation and sale of evergreens, and under the facts presented, it is clear that the property would not qualify on this basis.