ANDREW, P.J.T.C.
In this local property tax matter, plaintiffs, Francis E. and Judith B. Bateha, contest the 1994 assessment of then property *3 located at 349 Pennington-Titusville Road, Block 62, Lot 24 in Hopewell Township, Mercer County. The subject property which, plaintiffs maintain, constitutes a “working horse farm,” consists of 143 acres. The 1994 assessment was
Land: $ 607,000
Improvements: 515,500
Total: $1,122,500
On June 17, 1996, plaintiffs filed a complaint with the Tax Court seeking retroactive farmland assessment of their property pursuant to N.J.S.A. 54;4-23.13c.[1] for the tax year of 1994. Francis E. Batcha, an attorney, is representing himself and his wife in this matter.
Plaintiffs allege that they filed a timely application for farmland assessment of their horse farm for the tax year of 1994, i.e., on or before August 1, 1993. See N.J.S.A. 54:4-28.6(c). Plaintiffs maintain that the Hopewell Township tax assessor denied their application because plaintiffs’ farm activities involved the boarding and training of horses. At that time qualifying agricultural activities did not include the boarding and training of horses. See Bloomingdale, Ind. Park v. Bloomingdale Bor., 1 N.J.Tax 145, 148-149 (Tax 1980); Dowd v. Howell Tp., 15 N.J.Tax 82, 87 (Tax 1995) and N.J.S.A. 54:4-23.3.
*4 As a consequence of the denial of farmland assessment, the tax assessor assessed plaintiffs’ property for tax year 1994 at its market value and not at its preferential farmland value. Plaintiffs concede that they did not file an appeal from the 1994 assessment by the statutory deadline of April 4, 1994. See N.J.S.A. 54:3-21 (The filing deadline expressed in the statute is April 1, however, for tax year 1994 this was extended to April 4, 1994 because April 1, 1994 was a holiday mrt April 2 and 3 fell on Saturday and Sunday, respectively).
Apparently after the enactment of the retroactive provision in N.J.S.A. 54:4-23.13c., plaintiff, Francis E. Batcha, filed a petition of appeal with the Mercer County Board of Taxation sometime in April 1996 seeking farmland assessment for the subject property for tax year 1994. The judgment issued by the board indicates that the board treated plaintiffs petition of appeal as an appeal with respect to the 1996 tax year and not the 1994 tax year. It is apparent, however, that plaintiffs appeal to the county board was with respect to the 1994 tax year pursuant to N.J.S.A. 54:4-23.13c. The board dismissed the appeal because it was received after the statutory deadline (April 1, 1996) for receiving appeals for the tax year 1996. See N.J.S.A. 54:3-21. Plaintiffs then filed a complaint with the Tax Court contending that their application for farmland assessment for 1994 was denied because “boarding and training of horses was being conducted on the farm.”
Defendant, Hopewell Township, filed a motion to dismiss plaintiffs’ complaint on the ground that the complaint did not conform with the requirements of N.J.S.A. 54:4-23.13c. Specifically defendant asserts, and plaintiffs do not dispute, that plaintiffs did not file a timely appeal in 1994 from the tax assessor’s denial of farmland assessment, and thus, the statute at issue, by its own terms, does not apply to provide the retroactive relief which plaintiffs seek in this case.
In response, plaintiffs claim that the portion of the statute requiring the filing of an appeal is unconstitutional and should be excised and then assert their entitlement to relief once the offending language has been removed from the statute. Plaintiffs gave *5 notice to the Attorney General’s office of their intention to challenge the constitutionality of N.J.S.A. 54:4-23.13c. pursuant to R. 4:28-4. The Attorney General’s Office then moved to intervene in this case to defend the constitutionality of N.J.S.A. 54:4-23.13c. That motion was granted.
Shortly thereafter, this court received the Attorney General’s brief supporting defendant’s motion to dismiss plaintiffs’ complaint. In addition to defending the constitutionality of N.J.S.A. 54:4-23.13e., the Attorney General asserted that plaintiffs did not qualify for relief under all of the criteria outlined in N.J.S.A. 54:4-23.13c. The Attorney General alleged that the assessor denied plaintiffs’ application for farmland assessment not because plaintiffs’ farm activities involved the boax-ding and training of horses, but leather because plaintiffs failed to provide proof satisfying the gx’oss sales requirement of the Farmland Assessment Act pursuant to N.J.S.A. 54:4-23.5.[2] According to the Attorney Genei'al, N.J.S.A. 54:4-23.13c. only accords retroactive farmland assessment to taxpayei's who were denied farmland assessment because boarding and training of horses, among other nonqualifying uses, did not qualify as an agxúcultural use under the prior version of the Farmland Assessment Act. Thus, the Attorney General argued that since plaintiffs do not qualify for retroactive relief under the facial requirements of N.J.S.A. 54:4-23.13c., this coux"t need not i-each plaintiffs’ constitutional challenge.
Oi'al argument on the motion to dismiss plaintiffs’ complaint was conducted on October 25, 1996. At that time, plaintiffs disputed the Attorney General’s assertion that their application for fax-m-land assessment was denied by the assessoi- for plaintiffs’ failure to satisfy the gross sales requirement. Plaintiffs countered that the assessor denied their application for farmland assessment *6 because plaintiffs’ use of the property to board and train horses did not qualify as an agricultural use under the Farmland Assessment Act as defined by N.J.S.A 54:4-23.3 in 1993 and 1994. Plaintiffs maintained that they could prove them assertion but required additional time to assemble the necessary proofs. The motion was adjourned to provide plaintiffs the opportunity to establish that they met the necessary requisites under N.J.S.A. 54:4-23.13c. for retroactive farmland assessment for tax year 1994.
Subsequent to oral argument, plaintiffs and the municipality entered into the following stipulation which, was submitted to- this court:
The parties to the within matter having conferred and having agreed that certain facts are not in dispute stipulate as follows:
1. Plaintiff is the owner of a 143 acre farm and filed an application for Farm Land Assessment-as required by the Farm Land Assessment Act for the year 1994. In August 1993, the property was owned by Castle Bar, Inc., and was transferred into the names of the current owners on or about December 29, 1993.
2. Plaintiffs application was denied based on no evidence that any activity other than boarding- and training was occurring, and a determination that the use of the land for boarding and training of horses was not an agricultural use which met the eligibility requirements under the Farm Land Assessment Act.
3. Had training and boarding of horses,-together with the imputed value from grazing, been qualified activities under the Farm Land Assessment Act for farm use for the year of 1994 plaintiffs property would have qualified for Farm Land Assessment for that year.
4. Plaintiff did not file an appeal of the denial during the time for appeal in 1994. By executing this stipulation the parties agree to the above facts.
The Attorney General objected to the stipulation of facts entered into between plaintiffs and the municipality. The Attorney General asserted that the portion of the parties’ stipulation that indicated that plaintiffs’ farmland assessment application was denied based on the assessor’s determination that “no evidence that any activity other than boarding and training was occurring,” is contrary to fact, and therefore, invalid. The Attorney General further objected to the stipulation that had “training and boarding of horses, together with the imputed value from grazing, been qualified activities under the Farmland Assessment Act for farm use for the year of 1994, plaintiffs’ property would have qualified for Farmland Assessment.”, The Attorney General claimed that *7 the stipulation was speculative and immaterial to resolution of the issue before the court.
In this proceeding, plaintiffs contend that they qualify for retroactive farmland assessment under N.J.S.A. 54:4-23.13c. The statute allows for retroactive preferential assessment if: (1) the taxpayer made a timely application for assessment under the Farmland Assessment Act of 1964, (2) for the tax year 1993 or later, (3) the application was denied because the tax assessor determined that the taxpayer’s use of the land for certain uses enumerated in the statute was not an agricultural use, (4) an appeal from that denial was timely filed, and (5) the taxpayer resubmitted the application after December 15, 1995, the effective date of the enactment. N.J.S.A. 54:4-23.13c. The language of the statute requires that a taxpayer must meet each of the enumerated requisites in order to qualify for retroactive preferential assessment treatment. Defendant, Hopewell Township, maintains that plaintiffs failed to meet the fourth requisite of the statute because they failed to file an appeal from the tax assessor’s denial.
As a result of the Attorney General’s objection to the stipulation of facts, there is an additional issue which must be decided before the issue of a failure to file an appeal from the assessor’s denial is considered. That is, whether plaintiffs satisfied the third requirement for retroactive relief under N.J.S.A. 54:4-23.13e. If the Attorney General’s assertion is correct, and the assessor denied plaintiffs’ farmland assessment application for failure to provide proof of gross sales, plaintiffs are not entitled to relief under N.J.S.A. 54:4-23.13c. and this court need not reach the issue of plaintiffs’ failure to file an appeal from the assessor’s denial of farmland assessment and the constitutional question w'hich inescapably follow's. For this reason, a factual hearing was scheduled to permit the parties to produce evidence to demonstrate why the assessor denied plaintiffs’ farmland assessment application for 1994.
Specifically, the issue to be decided in this case is whether the assessor denied plaintiffs’ application for farmland assessment because plaintiffs’ use of the property to board and train horses *8 did not qualify as an agricultural use under the Farmland Assessment Act for the 1994 tax year, or because plaintiffs failed to satisfy the gross sales requirement.
Based on the testimony presented and evidence adduced at the hearing of this matter on May 21, 1997, I find that the assessor denied plaintiffs’ application for farmland assessment because plaintiffs failed to satisfy the gross sales requirement mandated by N.J.S.A. 54:4-23.5. Antoinette Sost, Tax Assessor for Hopewell Township, testified numerous times during the hearing that she denied plaintiffs’ application for farmland assessment for tax year 1994 because plaintiffs failed to prove gross sales in excess of $500. Having observed Sost testify, noting her demean- or and analyzing her responses, I find Sost’s testimony to be wholly credible.
Moreover, the correspondence from Sost to plaintiffs during late 1993 clearly and convincingly corroborates her testimony. After receiving plaintiffs’ farmland assessment application, Sost sent a notice, dated August 3, 1993, to plaintiffs indicating that their application was incomplete with respect to income or sales receipts. Specifically, the notice stated, ‘We need an actual receipt for the $25,000 listed on the Supplemental Land Use Form. Please send this to this office by August 11,1993.”
Not hearing from plaintiffs, on October 12, 1993, the assessor sent plaintiffs a “Notice of Disallowance of Claim for Valuation of Land under The Farmland Assessment Act of 1964.” The denial notice clearly stated that plaintiffs’ application for farmland assessment was denied for failure to provide adequate proof of gross sales. The notice even quoted regulatory authority for the denial, stating that:
N.J.A.C. 18:15-6.1 requires proof of gross sales for Qualifying under Farmland Assessment. We requested this information in August, as of yet we have not received proof of income. Our office will reconsider your Application for Farmland Assessment for 1994 if these receipts are received by November 1, 1993.[3]
*9 Despite the assessor’s denial of plaintiffs’ application for farmland assessment, the assessor advised plaintiffs that she would reconsider plaintiffs’ application for tax year 1994, if plaintiffs supplied receipts demonstrating gross sales to her office by November 1, 1993.
Not hearing from plaintiffs by November 1, 1993, the assessor, in a letter to plaintiffs dated November 4, 1993, advised that she was constrained to deny plaintiffs’ farmland assessment application for 1994 because there had been a failure to provide the requested receipts of gross sales. This letter again cited N.J.A.C. 18:15-6.1 as the authority requiring plaintiffs to prove the requisite amount of gross sales of agricultural or horticultural products to obtain farmland assessment.
The testimony of plaintiff, Francis E. Batcha, further confirms the accuracy of the assessor’s testimony. Batcha freely admitted that he never tendered any proof of gross sales to the assessor in conjunction with his application for farmland assessment for tax year 1994. Interestingly, he did, however, testify that he had proof of gross sales for the two years prior to the year for which he sought farmland assessment as required by the Farmland Assessment Act. See N.J.S.A. 54:4-23.5, -23.6. At the hearing, Batcha stated that the subject property produced $76,553 in gross income in 1992, and $63,523 in gross income for 1993, and produced documentary evidence to substantiate his testimony. He provided portions of his 1992 and 1993 federal tax returns reflecting income derived from the subject property. Schedule F of the 1992 federal tax return revealed gross income of $76,553, which Batcha claims was derived from the boarding and training of horses. Schedule F of the 1993 tax return indicated gross income of $38,523 from the boarding and training of horses. For 1993, Form 4797, pertaining to the sale of business property, showed an *10 additional $25,000 of gross income, which Batcha testified resulted from the sale of a horse.
Plaintiff, Batcha, testified that he told the assessor he would provide the above referenced proof of gross sales to her, but that the assessor stated that she would not accept such proof because the gross income originated from the boarding and training of horses, which was not an authorized use under the Farmland Assessment Act in 1993. Batcha concedes that the documents were never actually offered to the assessor or the assessor’s office. According to plaintiffs, subsequent to the denial of them farmland assessment application pursuant to the assessor’s October 12, 1993 letter, the assessor, or an employee of the assessor’s office visited the subject property.[4] Batcha could not recall who visited the farm, but testified that he offered to provide the 1992 and 1993 tax returns and other proof of gross income, but that the individual he spoke to stated that she would refuse to accept such proof of gross sales because the gross income resulted from the boarding and training of horses, which was not an authorized use under the Farmland Assessment Act.
Nevertheless, Batcha concluded that the inspection satisfied the assessor that the subject property qualified for farmland assessment, even though the assessor or representative from the assessor’s office purportedly refused to accept proof of gross sales. According to Batcha, he believed that the assessor had reversed her previous denial and would now grant farmland assessment for 1994. . This belief on Batcha’s part was never reduced to writing by the assessor or her office. Incredibly, Batcha then asserted that he did not learn that the assessor had not reversed her prior denial until late in 1994 when he applied for farmland assessment for tax year 1995. Batcha also conveniently testified that he never received a notice of assessment in early 1994 which would have *11 reflected an assessment at fair market value instead of farmland value. Consequently, Batcha stated that he did not appeal the assessor’s denial of farmland assessment for 1994, because he was unaware that the assessor denied his application for farmland assessment for 1994. This was Batcha’s testimony despite the fact that he never received anything in writing from the assessor or her office that she had reversed her original written decision denying farmland assessment for 1994.
I do not find Batcha’s testimony that either the assessor or a representative of the assessor’s office would not accept his proof of gross sales to be credible. Moreover, plaintiffs cannot circumvent the fact that they never actually produced any proof of gross sales to the assessor. True, plaintiffs assert that they wanted to produce proof, but it is uncontested that plaintiffs never physically tendered proof of gross sales to the assessor. Taxpayers seeking farmland assessment have the burden of producing evidence to satisfy the gross sales requirement. This conclusion finds clear support in those cases in which the gross sales requirement was in issue. For example, in Gottdiener v. Roxbury Tp., 2 N.J.Tax 206, 220-21 (Tax 1981), Judge Evers rejected canceled checks absent a statement from the supposed purchaser that the alleged sale did, in fact, occur, and thus made clear that any proof adduced in satisfaction of the gross sales requirement must be scrutinized for sufficiency. See also Green Pond Corp. v. Rockaway Tp., 2 N.J.Tax 273, 281 (Tax 1981) (stating that taxpayer may satisfy gross income requirement either by establishing annual gross sales of at least $775 for two years preceding tax year in question, or by providing clear evidence of anticipated yearly gross sales of at least $775 within a reasonable period of time following each tax year), aff’d in part, o. b., appeal dismissed in part, 4 N.J.Tax 534 (App.Div.1982).
Plaintiffs failed to tender proof of gross sales, and therefore, the assessor properly denied the application because, absent clear proof of gross sales from the taxpayer, the assessor had no way of determining that the property satisfied the statutory requisite of N.J.S.A. 54:4-23.5. In this case, common sense also supports this *12 conclusion. A conscientious assessor, which I find the Hopewell Township assessor to be, would not reject proof of gross sales as insufficient without, at least, looking at the documents purporting to establish adequate gross sales.
I further find Batcha’s explanation of why no appeal was filed to be baseless. Plaintiffs could not have reasonably concluded that the assessor had changed her mind and that their application for farmland assessment had been granted for 1994. No reasonable person could conclude after receiving a written notice denying farmland assessment for failure to satisfy the gross sales requirement, that the assessor’s determination was reversed without having obtained written confirmation of the reversal. Plaintiffs’ unreasonable belief becomes even more apparent in view of the supposed October meeting with an undetermined individual from the assessor’s office in which that individual refused to accept proof of gross sales. Plaintiffs assert that despite the individual’s rejection of the proof of gross sales, that they were led to believe that the assessor reversed her decision denying farmland assessment for lack of proof of gross sales' and had apparently approved plaintiffs’ application for farmland assessment. Plaintiffs’ claim is just not credible. No reasonably prudent person could have reached the conclusion that plaintiffs offer to this court.
There is another compelling basis for concluding that the assessor denied plaintiffs’ farmland application for lack of proof of gross sales. That basis is a complete lack of motive or reason on the part of the assessor to have engaged in the subterfuge implied by plaintiffs. The assessor could have easily denied plaintiffs’ farmland assessment application for 1994 on the basis that the boarding and training of horses was not a qualifying agricultural use at that time. See Bloomingdale Ind. Park v. Bloomingdale Bor., supra; Dowd v. Howell Tp., supra and N.J.S.A. 54:4-23.3. This could have been accomplished with much less effort than was expended by the assessor in her unsuccessful attempts to secure proof of gross sales as demonstrated by her letters of August 3, 1993, October 12, 1993 and November 4, 1993 to plaintiffs. Instead of repeatedly offering plaintiffs the opportunity to produce *13 evidence of gross sales, the assessor could have simply denied plaintiffs’ 1994 farmland assessment application because of plaintiffs’ failure to use the subject property for a qualifying agricultural use as defined by N.J.S.A 54:4-23.3 at that time in 1993.
The boarding and training of horses did not become an acceptable agricultural use under the Farmland Assessment Act until December 15,1995 when the act was amended. See L.1995, c. 276. There does not seem to be any reason why the assessor would have denied plaintiffs’ application on the basis of a lack of proof of gross sales if, in fact, she was of the opinion, in the latter part of 1993, that plaintiffs’ use of the property did not qualify because the boarding and training of horses did not constitute a qualified agricultural use. Furthermore, N.JS.A 54:4-23.13c., which provides retroactive relief to those denied farmland assessment because boarding and training of horses was not an authorized agricultural use, was not enacted by the Legislature until 1995. Thus, N.J.S.A. 54:4-23.13c., enacted two years after the assessor’s denial of plaintiffs’ farmland application, could in no way have influenced the assessor’s reasoning in denying plaintiffs’ application in 1993.
The bulk of plaintiffs’ case was directed at attacking or impugning the assessor’s credibility in order to support plaintiffs’ contention that their application was denied for reasons other than those stated by the assessor. Plaintiffs primarily assailed the assessor’s credibility by highlighting the assessor’s approval and adoption of the stipulation of facts entered into between plaintiffs and the township. The stipulation stated that plaintiffs’ application, “was denied based on no evidence that any activity other than boarding and training was occurring, and a determination that the use of the land for boarding and training of horses was not an agricultural use which met the eligibility requirements under the Farm Land Assessment Act.” The assessor conceded that she reviewed and approved the stipulation. But, the assessor also testified that she thought the stipulation of facts included the language “no evidence of gross sales,” and testified that she explicitly requested *14 the municipality’s attorney to include the language “no evidence of gross sales,” in the stipulation.
Unquestionably the stipulation, read literally, is opposed to the assessor’s testimony and appears to impeach her credibility.' When one considers the evidence and testimony adduced at the hearing in its entirety, however, the effect of the seemingly inconsistent stipulation is negligible. The assessor made repeated attempts to secure gross sales information from plaintiffs, evidenced by the assessor’s testimony and corroborated by the assessor’s letters to plaintiffs in late 1993. Furthermore, as discussed previously, the assessor lacked any motive to engage in the subterfuge impliedly asserted by plaintiffs by concealing the true reason for denying plaintiffs’ application.
To the contrary, the assessor would have had a greater motive to deny plaintiffs’ application on the basis that boarding and training of horses was not an authorized agricultural use, because denial on the basis of an unauthorized use would have entailed considerably less effort than that which was actually expended-. The assessor would not have been required to repeatedly attempt to obtain proof of gross sales so that the assessor could deny the application on . that basis. For these reasons, I find that the assessor’s approval of the stipulation is of little consequence. At best, the assessor’s approval of the stipulation indicates that she did not read it with sufficient care.
The assessor’s testimony, coupled with .the assessor’s three letters to plaintiffs cogently demonstrates that she denied plaintiffs’ application because plaintiffs failed to provide proof satisfying the gross sales requirement of the Farmland Assessment Act. Consequently, it is obvious that the assessor did not deny plaintiffs’ application on the basis that plaintiffs’ use of the land for the boarding or training of horses did not constitute an agricultural use under the Farmland Assessment Act. .
In order for plaintiffs to receive retroactive relief, N.J.S.A. 54:4-23.13c. explicitly requires that they'prove they were denied farmland assessment because boarding and training of *15 horses, among other uses, did not qualify as an authorized agricultural use under the Farmland Assessment Act as it existed in 1994. This is the plain language of the statute. Courts, in the construction of a statute, are required to first consider its plain language and give that language its ordinary meaning in the absence of any specific indication of legislative intent to the contrary. Town of Morristown v. Woman’s Club, 124 N.J. 605, 610, 592 A.2d 216 (1991); Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987). I cannot speculate on legislative intent when the wording of the statute is clear. State v. Bigham, 119 N.J. 646, 651, 575 A.2d 868 (1990); Alling Street Urban Renewal Co. v. Newark, 204 N.J.Super. 185, 189, 497 A.2d 1287 (App.Div.1985), certif. denied, 103 N.J. 472, 511 A.2d 653 (1986); MacMillan v. Taxation Div. Director, 180 N.J.Super. 175, 177, 434 A.2d 620 (App.Div.1981), aff’d o. b., 89 N.J. 216, 445 A.2d 397 (1982). Plaintiffs failed to prove that their denial was based on a reason embraced by the retroactive relief statute, and therefore, have not met the third requisite of the statutory provision and are not eligible for the relief it provides. On this basis alone, I grant defendant’s motion and dismiss plaintiffs’ complaint.
 Since plaintiffs have failed to satisfy the third requirement of N.J.S.A 54:4-23.13c., I need not reach plaintiffs’ constitutional argument, and indeed our Supreme Court admonishes that courts should not reach constitutional questions unless necessary to the disposition of the litigation. O’Keefe v. Passaic Valley Water Com’n, 132 N.J. 234, 240, 624 A.2d 578 (1993). The policy underlying the judicial avoidance of constitutional questions stems from, “a respect for other branches and levels of government, an awareness of the limitations of judicial power, sensitivity to the burdens of a constitutional adjudication, and appreciation that others may provide a more useful answer.” Id. at 241-42, 624 A.2d 578.
In conclusion, I direct the Tax Court Administrator to issue a judgment dismissing plaintiffs’ complaint for retroactive relief pursuant to N.J.S.A 54:4-23.13c. because plaintiffs failed to establish that they were denied farmland assessment on the basis that *16 boarding and training of horses “was not an agricultural use which met the eligibility requirements of section 3 of P.L. 1964, c. 48 (0.54:4-23.3).” N.J.S.A. 54:4-23.13c.

 N J.S.A 54:4-23.13c. provides as follows:
If any application ior valuation, assessment and taxation under P.L. 3964, c. 48 (C. 54:4-23.3 et seq.) made for the 3993 tax year or later, which was denied based on a determination that the use of land for breeding, boarding, raising, rehabilitating, training or grazing of livestock was notan agricultural use which met the eligibility requirements of section 3 of P.L. 1964, c. 48 (C. 54:4-23.3), and for which an appeal was filed and which is resubmitted after the effective date of P.L. 1995, c, 276 and approved as a result of the amendments to section 3 of P.L. 1964, c. 48 (C. 54:4-23.3) by section I of P.L. 1995, c. 276, and to section 5 of P.L. 1964, c. 48 (C. 54:4-23.5) by section 2 of P.L. 3995, c. 276, the land for which the application was made shall be deemed to have been eligible for valuation, assessment, and taxation under P.L. 1964, c. 48 as of the first eligible tax year after the application, and the taxing district shall make retroactive payments to the landowner in the amount of the taxes paid which were m excess oí the amount payable if taxed under P.L. 1964, c. 48. Effective December 15, 1995. (Emphasis Added]

 N.J.S.A. 54:4-23.5 provides that “land shall be deemed actively devoted to agricultural or horticultural use when the amount of gross sales . have averaged at least $500.00 per year during the 2-year period immediately preceding the tax year in issue." Thus, a taxpayer bears the burden of proving that his property produced at least $500 in gross sales in order to obtain farmland assessment.

 N.J.A.C. 18:15-6.1 iterates the requirement of N.J.S.A. 54:4-23.5 that the amount of gross sales of agricultural or horticultural products produced on the *9 subject property must average at least $500 per year during the two-year period immediately preceding the tax year at issue in order to qualify for farmland assessment.

 Batcha's version of the assessor’s visit to the subject property in October 1993 was disputed b}f the assesspr. The assessor testified that she visited the subject property on October 25, 1993 but did not speak to Batcha, and further testified that she did not send a representative to inspect the subject property at that time.